## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**DWAYNE FELIX GINN**

**CIVIL ACTION**

**VERSUS**

**NO.  19-12323**

**ANDREW SAUL,
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION**

**SECTION "M"(4)**

## REPORT AND RECOMMENDATION

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 U.S.C. § 405(g).   The Commissioner denied Dwayne Felix Ginn ("Ginn")'s claim for Supplemental Security Income pursuant to Title XVI of the Social Security Act.  The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations.

### I.    Factual Summary

Ginn is a fifty-three (53) year old male who last worked as a groundskeeper in 2014 or 2015.  Rec. doc. 17-1, p. 8; Rec. doc. 11-2, Tr.17.  At the date of the alleged onset, Ginn was forty-nine (49), which is defined as a younger individual.  Rec. doc. 17-1, p. 8; Rec. doc. 11-2, p. 17. He complains that his disability began on March 26, 2016.  Rec. doc. 11-2, Tr. 11, 27.  He contends that he is disabled under Listing 12.03 A, B, C, and Social Security Ruling 96-9p, and, as of March 7, 2017, would meet Rule 201.14 of the Medical-Vocational Guidelines, given his age, education, and work experience.  Rec. doc. 11-2, Tr. 28.  Specifically, Ginn contends he has no energy or interest in things, shoulder pain, an inability to lift things, loss of grip strength, wrist and knee

pain, does not like being around people, hears knocking and voices, and has severe depression with psychotic symptoms. *Id.* at 28-29, 35-38.

Ginn was last insured on December 31, 2014. Rec. doc. 11-3, Tr. 5. On June 2, 2017, Ginn filed a Title XVI application for supplemental security income initially claiming an onset date of May 14, 2014. Rec. doc. 11-5, Tr. 6. The claim was initially denied on September 19, 2017. Rec. doc. 11-4, Tr. 10-13. Ginn, thereafter, submitted a request for hearing on October 13, 2017. Rec. doc. 11-4, Tr. 14-16. The hearing before Administrative Law Judge ("ALJ") Louis J. Volz, III, took place on August 3, 2018, at which time Ginn amended his onset date to March 26, 2016. Rec. doc. 11-2, Tr. 24-46. On October 30, 2018, the ALJ found that Ginn was not disabled from June 2, 2017, the date his application was filed, through the date of the decision. Rec. doc. 11-2, Tr. 11-19.

In reaching the decision, the ALJ found that Ginn had not engaged in substantial gainful activity since June 2, 2017, the application date. Finding 1, Rec. doc. 11-2, Tr. 13. The ALJ also found that Ginn had degenerative disc disease, arthropathies, substance addiction disorder, and depression which significantly limit the ability to perform basic work activities as required by SSR 85-28. Finding 2, Rec. doc. 11-2, Tr. 13. The ALJ found that Ginn does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments. Finding 3, Rec. doc. 11-2, Tr. 13-15. The ALJ further found that Ginn has the residual functional capacity to perform sedentary to light work with the additional limitation of simple, one or two step repetitive tasks. Finding 4, Rec. doc. 11-2, Tr. 15-17.

In Findings 5-7, the ALJ found that Ginn was unable to perform his past relevant work, was a younger individual on the date his application was filed, but subsequently changed age

2

category to closely approaching advanced age, has a high school education, and is able to communicate in English.  Findings 5-7, Rec. doc. 11-2, Tr. 16.  In Finding 8, the ALJ found that the transferability of job skills is not material to a determination of disability because the Medical-Vocational Rules Framework supported a finding that Ginn was "not disabled" even if he had transferable skills.  Finding 8, Rec. doc. 11-2, Tr. 17.  Finally, the ALJ concluded that, considering Ginn's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy he can perform such as a food preparation worker, building cleaner, dining room attendant, general clerk, and surveillance system monitor.  Finding 9, Rec. doc. 11-2, Tr. 17-19.  The ALJ, therefore, concluded that Ginn was not under a disability from June 2, 2017 through the date of the decision.  Finding 10, Rec. doc. 11-2, Tr. 19.

After being denied administratively, Ginn filed a complaint in this Court challenging the denial of his application for supplemental security income.  Rec. doc. 1.  Ginn contends that the ALJ rejected the findings of both treating physicians and substituted his own medical opinion. Rec. doc. 17, p. 3.  Ginn complains that the ALJ failed address the findings of Dr. King regarding the applicability of SSR 96-9p.  Rec. doc. 17, p. 11.  Ginn also complains that the ALJ improperly "pick[ed] and [chose]" portions of the record to support the finding that Ginn's psychiatric impairments would not be disabling but for his episodic noncompliance.  *Id*.  As such, Ginn contends that the Commissioner's denial of benefits is not supported by substantial evidence.

The Commissioner contends that he did not render his own medical decision, but rather his decision was based on substantial evidence in the record that Ginn's mental impairment did not rise to the level of presumptive disability.  Rec. doc. 18, pp. 4-5.  The Commissioner also contends that substantial evidence supports his Residual Functional Capacity assessment.  Rec. doc. 18, p.

6.  He contends that Rule 201.14, upon which Ginn relies to claim he became disabled at age 50 due to a lack of transferrable skills, is not applicable.  *Id*.  The Commissioner further contends that SSR 96-9p is not applicable and does not result in a finding of disability.  Rec. doc. 18, at p. 7. Finally, the Commissioner claims that substantial evidence supports his findings that Ginn has a severe mental impairment, but when compliant with medication, he could perform no more than light work with simple, one to two step repetitive tasks.  Rec. doc. 18, at pp. 7-8.

## II.    <u>Standard of Review</u>

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is to determine whether there is substantial evidence in the record to support the determination of the fact finder. The Court may not re-weigh the evidence, try issues de novo, or substitute its judgment for that of the Secretary.  *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981).  If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (citing 402 U.S.C. § 405(g)); *see also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981).

Substantial evidence is more than a scintilla and less than a preponderance and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion.  *See Richardson*, 402 U.S. at 401.  It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "contrary medical evidence."  *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act, as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted ... for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Commissioner applies a five-step sequential evaluation process. The rules governing the steps of this evaluation process are: (1) a claimant who is working and engaging in a substantial gainful activity will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if a claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether is he can do other work. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The burden of proof is on the claimant for the first four steps but shifts to the Commissioner at step five. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

For mental impairments, an additional regulatory process supplements the five-step process detailed above. *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). It requires the hearing

officer to record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment, contained in the case record, in order to determine if a mental impairment exists. *Id.* If an impairment is found, the examiner must analyze whether certain medical findings relevant to a claimant's ability to work are present or absent. *Id.* The examiner must then rate the degree of functional loss resulting from the impairment in certain areas deemed essential for work. *Id.*[1]

In determining whether a potential claimant is disabled, medical opinions from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments will always be considered. 20 C.F.R. § 404.1527. If the record contains a medical opinion from a treating physician on the nature and severity of the claimant's impairments, the Commissioner's Regulations dictate that it must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. § 404.1527(c)(2); *see also Frey v. Brown*, 816 F.2d 508, 513 (10th Cir. 1987).

The Regulations provide that the ALJ will make a determination based on the available evidence if all evidence received by the ALJ, including medical opinions, is consistent. 20 C.F.R. § 404.1527(c)(4). The Regulations also contain a general rule that greater weight should be given to the medical opinions of treating sources because they are more likely to be the "medical professionals most able to provide a detailed, longitudinal picture" of a claimant's medical impairments. 20 C.F.R. § 404.1527(c)(2). However, if a medical opinion issued by a treating

---

[1] 20 C.F.R. § 404.1520a(c) provides for the examination of the degree of functional loss in four areas of function considered essential to work. These areas of activities are daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id*. The degree of limitation in the first three functional areas are rated on a scale that ranges from no limitation to severe. *Id*. The degree of limitation in the fourth functional area (episodes of decompensation), is rated on the following four-point scale: none, one or two, three, four or more. *Id*.

physician is not given controlling weight because it is not well-supported or inconsistent with evidence in the record, then the Court will determine the appropriate weight to give the opinion based on a list of factors found in 20 C.F.R. § 404.1527(d).

Based on the examination of the aforementioned factors, the ALJ must decide how much weight to give the treating physician's opinion.  If the results from multiple factors suggest that the treating physician's opinion should be more closely considered despite its inconsistency or lack of support in the record, great weight should be given to it.  *See Mosca v. Massanari*, No. Civ.A. 01-10481-PBS, 2002 WL 511522, at *7 (D. Mass. Jan. 30, 2002).  In all situations, the Commissioner must give specific, legitimate reasons if the ALJ's decision disregards the treating physician's opinion that a claimant is disabled.  *See Williams v. Bowen*, 844 F.2d 748, 758 (10th Cir. 1988).

If the ALJ does not discuss or apply the factors listed in 20 C.F.R. § 404.1527(d), the Court may remand the case for re-evaluation if the ALJ assigned more weight to a non-treating source opinion than to the treating physician's medical opinion of the claimant.  *Mosca*, 2002 WL 511522, at *7; *see also Baker v. Brown*, 886 F.2d 289, 291 (10th Cir. 1989).  In situations where the treating physician's opinion is not given controlling weight, the ALJ must also explain the amount of weight he has assigned to the opinions of State agency medical and psychological consultants.  20 C.F.R. § 404.1527(d)(2).

III.    **Analysis**

    a.  **Whether the ALJ Improperly Substituted his Judgment by Rejecting the Findings of the Treating Physicians**

Ginn contends that the ALJ improperly substituted his opinion for the opinions of the medical experts.  Rec. doc. 17, p. 3-11.  He contends that the ALJ rejected the findings of both treating physicians, without any support from any treating or examining physician.  Rec. doc. 17, at pp. 3, 10-11.  Ginn contends that Dr. King found that he met the criteria for disability under Listing 12.03 A, B and C, which would direct a finding of disability.  Rec. doc. 17, p. 3.  He further argues that Dr. Cruz found he that could not do light nor sedentary work due to his low back pain, which requires him to recline daily or almost daily, and recline for much of the day one to times a week.  Rec. doc. 17, p. 10.  Ginn argues that either limitation precludes him from meeting the requirements of listing 96-8p.  *Id*.  He continues that, as of his fiftieth birthday, a finding of disability is directed under Rule 201.14 due to the lack of transferability of skills.  *Id*.  Finally, Ginn claims that even if he could otherwise perform sedentary work, Dr. Cruz's findings regarding the use of his hands does not meet the requirement of SSR 96-9p.  *Id*.

    The Commissioner contends that the ALJ properly determined that Ginn had no marked or extreme limitations in any of the paragraph B criteria for Listing 12.03, and, therefore, Ginn's impairment did not rise to the level of presumptive disability.  Rec. doc. 18, pp. 4-5.  The Commissioner further contends that Dr. King completed a brief and conclusory form in indicating Ginn's restrictions and that he provided no justification for his unsupported findings.  Rec. doc. 18, p. 5.  The Commissioner also contends that Dr. King's opinion was inconsistent with other evidence of the record, and the ALJ was free to disregard his opinion.  *Id*.  The Commissioner

similarly argues that Dr. Cruz simply completed a box-checking form and did not provide physical examination findings to support his assessment. *Id.* The Commissioner continues that the objective evidence, including the physical examination, does not support Dr. Cruz's findings. *Id.* The Commissioner also argues that Ginn's reliance on Grid Rule 201.14 is irrelevant as the ALJ found he could perform light work. *Id.* Finally, the Commissioner claims that the ALJ determined, with the assistance of a vocational expert, whose testimony Ginn does not dispute, that there were light jobs in the national economy that Ginn could perform. Rec. doc. 18, pp. 6-7.

Generally, the opinions and diagnoses of a treating physician who is familiar with a claimant's injuries and responses "should be accorded considerable weight" when determining disability. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994) (citation omitted). However, "when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony." *Id.* Among the exceptions that constitute "good cause" are "statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or [are] otherwise unsupported by the evidence." *Id.* Moreover, the ALJ is "entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." *Id.* (citations and internal quotation marks omitted). Finally, the treating physicians' opinions "are far from conclusive." *Id.* "[T]he ALJ has the sole responsibility for determining the claimant's disability status." *Id.*

The record shows that both Dr. Cruz and Dr. King determined, through check-box forms, that Ginn was unable to work. Yet, an analysis of the medical records, including the reports of his treating doctors, shows contradictions between the treating doctors' conclusion—that Ginn is disabled—with their objective findings.

9

Appellate courts, including the Fifth Circuit, have often held that checklist opinions are unworthy of credence when they are not adequately supported by or are inconsistent with the medical records. *See DeJohnette v. Berryhill*, 681 F. App'x 320, 321-22 (5th Cir. 2017) ("The ALJ was well within its [sic] discretion to conclude that [a treating physician's] checking a single box on a single form without any supporting medical evidence did not outweigh the other substantial record evidence supporting a finding of no disability."); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) ("[T]he 'questionnaire' format typifies 'brief or conclusory' testimony.... [W]e agree with the magistrate judge's conclusion that 'due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations, [the treating physician's] opinion is given little weight.'"); *Peck v. Barnhart*, 214 F. App'x 730, 738 (10th Cir. 2006) (The ALJ provided legitimate reasons for rejecting a doctor's opinion consisting "of checked boxes and circled numbers on a form" when the "opinion was not supported with additional explanation" nor justified by the doctor's treatment notes.); *Holmstrom v. Massanari*, 270 F.3d 715, 720 (8th Cir. 2001) ("the checklist format, generality, and incompleteness of the assessments limit their evidentiary value"); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999) (upholding ALJ's rejection of physician's check-box form when it was contradicted by evidence in the record); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (quotation omitted) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.... [When] these so-called reports are unaccompanied by thorough written reports, their reliability is suspect....").

The ALJ found the opinion of Dr. Cruz to be "unpersuasive." Rec. doc. 11-2, p. 17. He explained that the restrictions noted by Dr. Cruz were not supported by the treatment notes which reflected a conservative treatment plan and minimal physical findings. *Id*. Dr. Cruz's records,

which are mostly illegible, indicate that on February 20, 2015, Ginn complained of low pain back, and that Dr. Cruz advised him to exercise and change his lifestyle.  Rec. doc. 11-7, p. 155.  In July 2015, Ginn was seen by Dr. Cruz three times for a broken finger.  Rec. doc. 11-7, p. 152-54.  There is *no* mention of any other ailments; rather the notes indicate "NO" musculoskeletal problems.  *Id.* On October 2, 2015, Ginn complained of moderate shoulder and back pain that had last four days. Rec. doc. 11-7, p. 151.  His spine looked normal and his right shoulder had a normal range of motion.  *Id*.  Dr. Cruz prescribed medication and advised Ginn to exercise and use cold packs.  *Id.* The record is void of *any* evidence that Ginn saw Dr. Cruz again until December 22, 2017*, more than two years later*.  Rec. doc. 11-7, p. 150.  On that date, Ginn complained of low back pain, wrist pain, and right shoulder pain.  Dr. Cruz advised Ginn to take Ibuprofen for pain, exercise, and referred him to an orthopedist.  *Id*.  It is on this date, after this single visit, that Dr. Cruz completed a form indicating Ginn was unable to work.  Rec. doc. 11-7, p. 94.  There is no indication in the record that Ginn saw an orthopedist.

In considering the opinion of the ALJ, the Court finds that his decision finding Dr. Cruz's opinion unpersuasive is based upon substantial evidence.  The record provided sufficient information to support the finding.  Medical records from Slidell Memorial Hospital dated March 10, 2016, indicate that Ginn had a full range of motion, full strength, and intact sensation in all extremities.  Rec. doc. 11-7, p. 38.  Dr. King's notes from August 28, 2017, November 29, 2017, and February 19, 2018, indicate that Ginn was not taking any medication for low back and wrist pain.  Rec. Doc. 11-7, p. 128, 132, 137.  Notes from Dr. King dated September 12, 2018, indicate Ginn was referred to physical therapy for his back, but was not attending.  Rec. doc. 11-7, p. 75. The findings in Dr. Cruz's own treatment notes, along with his treatment plan, and the findings of other treating doctors do not substantially support the extreme symptoms and limitations listed in

Dr. Cruz's December 22, 2017 checklist opinion to the extent they exceed the ALJ's residual functional capacity assessment and his finding of no disability.

Similarly, the ALJ rejected the Dr. King's opinion explaining:

The undersigned also finds the opinion offered by Hugh King, M.D. to be unpersuasive. Dr. King noted marked and extreme limitations in several areas while noting sobriety over a year (Exhibit B7F). However, his treatment notes indicate improvement in the claimant's symptoms with consistent treatment. Moreover, mental status examinations contained in the records revealed a calm, attentive, casually groomed, and relaxed individual with normal speech and language skills. The claimant presented with a normal mood and appropriate affect while showing no signs of apparent hallucinations, delusions, or psychotic process. His associations were intact and thinking was logical (Exhibits B8F/29, 41)….

Rec. doc. 11-2, Tr. 17.

Dr. Cruz and Dr. King's checklist opinions are unsupported by clinical findings or narrative reports and, as discussed more fully below, are inconsistent with their own treatment notes. The Commissioner would have good cause to give the opinions little weight when weighed against the rest of the medical evidence

On December 22, 2017, Dr. Cruz completed a check-box form finding that Ginn suffered: (1) low back pain and pain his knees, although worse pain in his left knee, on protracted standing and/or walking; (2) low back pain with protracted sitting; and (3) pain in his wrists, loss of grip strength, and pain in his right shoulder with sustained or repetitive use of his hands. Rec. doc. 11-7, p. 94. Dr. Cruz asserted that standing, walking, and sitting six hours in an eight-hour day on a daily basis would exacerbate Ginn's low back and knee pain. *Id*. He found that Ginn must recline daily or virtually daily, as needed, for back pain and that one to two days a week he experiences "bad days", which require him to recline much or most of the day. *Id*. Finally, Dr. Cruz found that his assessment would have been no different at any time since March 2016. *Id.*

On December 22, 2017, Dr. King completed a check-box form in which he found Ginn had medically documented depression with psychotic features, including delusions and hallucinations. Rec. doc. 11-7, Tr. 95-96.  He found no signs of disorganized thinking or speech, grossly disorganized behavior nor catatonia.  *Id*., at p. 95.  Dr. King found "no" limitation to a "moderate" ability to understand, remember or apply information.  *Id*.  He found an "extreme" limitation regarding the ability to interact with others.  *Id*.  Dr. King asserted that Ginn had "marked" limitations in the abilities to maintain concentration, persistence or pace, and to adapt or mange himself.  *Id*.  He, however, noted that medical treatment, mental health treatment and psychosocial supports and highly structured settings diminished Ginn's symptoms and signs of his mental disorder.  *Id*.  He nevertheless found Ginn had a "[m]inimal capacity to adapt to changes in [his] environment or to demands that are not already part of [his] daily life.  *Id*.  Dr. King found that Ginn did <u>not</u> have a "substantial loss of the ability" to understand, carry out or remember simple instructions, but "demonstrated a substantial loss of ability" to: (1) make judgments that are commensurate with the functions of unskilled work; (2) respond appropriately to supervision, coworkers or usual work situations; and (3) deal with changes in routine work settings.  *Id*.  Dr. King included a hand-written note that Ginn had not consumed alcohol in over a year but was still unable to work.  Rec. doc. 11-7, Tr. 96.

Substantial evidence in the record also supports the ALJ's rejection of Dr. King's opinion that Ginn meeting Listing 12.03.  Dr. King's treatment notes of April 20, 2016 indicate that Ginn denied problems associated with anger, and reported no hallucinations, delusions or other symptoms of psychotic process.  Rec. doc. 11-7, Tr. 71.  His anger was well-controlled, and no impulsive behaviors were reported.  *Id*.  While he showed signs of moderate depression and

anxiety, he was attentive, communicative, articulate, and had no gross behavioral abnormalities. Rec. doc. 11-7, Tr. 72. Due to Ginn's complaint of hearing voices and sounds, Dr. King prescribed a low dose of Abilify. *Id*. Ginn reported that he was able to ask for help from others and could accept criticism from others. Rec. doc. 11-7, Tr. 98. Dr. King recommended that Ginn seek therapy to deal with his anxiety and depression. Rec. doc. 11-7, Tr. 73.

On April 22, 2016, Ginn had a psychotherapy session at the Mandeville Behavioral Health Clinic with John Strain, LPC. Rec. doc, 11-7, Tr. 109-110. Ginn appeared calm and relaxed, and had a normal mood with no signs of depression. Rec. doc, 11-7, Tr. 109. The session focused on problem solving skills. *Id*. Ginn was referred to "LRS" for job training or placement. *Id.*

The September 12, 2016 notes of Dr. King indicate that Ginn had not been taking his medication for several months and had started drinking alcohol six weeks earlier. Rec. doc. 11-7, Tr. 75. Dr. King certified that Ginn needed emergency inpatient care due to a possible suicide risk. Rec. doc. 11-7, Tr. 77.

While admitted to Greenbrier Behavioral Hospital on September 12, 2016, after months of noncompliance with medication and a relapse in alcohol, upon discharge on September 20, 2016, Ginn had no auditory hallucinations, his mood, judgment and insight were improved, and his thought processes were linear. Rec. doc. 11-7, Tr. 3, 9, 20. He was examined by Dr. King on September 21, 2016, and appeared calm, friendly, attentive, relaxed and happy. Rec. doc. 11-7, Tr. 79. He showed no signs of depression or anxiety. *Id*. Dr. King decreased Ginn's Fluoxetine dosage for depression and increase the Abilify dosage for voices. Rec. doc. 11-7, Tr. 81. He again recommended therapy. *Id.* On December 19, 2016, Ginn admitted that his depression was worse when he was under stress or drank alcohol. Rec. doc. 11-7, Tr. 83. He indicated that the "[v]oices are better with increase of Abilify." *Id.*

Ginn had a second session of psychotherapy on December 19, 2016, at which time he stated he was not as depressed as he had been. Rec. doc, 11-7, Tr. 125-26. He presented with a normal mood and appropriate affect. *Id.*, at p. 125. He had logical thinking and appropriate thought content. *Id.* There were no signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process. *Id.*

When seen at Slidell Memorial Hospital on January 25, 2017, for an ankle injury, Ginn denied problems associated with anger, he was calm and cooperative. Rec. doc. 11-7, Tr. 53. At that time, he reported drinking a six-pack of alcohol a day. *Id.*

Ginn was not examined by Dr. King from December 2016 until August 28, 2017. Rec. doc. 11-7, Tr. 88. Dr. King noted that Ginn's compliance with medication was irregular. Rec. doc. 11-7, Tr. 89. Ginn was described as calm, friendly, and communicative with moderate signs of depression. *Id.* His affect was appropriate and his associations intact and logical. *Id.* Ginn denied hearing voices but claimed to hear sounds at times. *Id.* He had no attention difficulties. *Id.* Ginn admitted that he needed to see his licensed professional health counselor. Rec. doc. 11-7, Tr. 88. Ginn was directed to continue taking his prescribed medication and seek therapy. Rec. doc. 11-7, Tr. 90.

On September 14, 2017, Ginn was evaluated by State Agency consultant Lisette Constantin, Ph.D. Rec doc. 11-3, Tr. 35-37. She indicated that Ginn smelled of beer. Rec. doc. 11-3, Tr. 35. She opined that if Ginn was not abusing alcohol his mental capacities would improve. *Id.* On September 19, 2017, Ginn was evaluated by a second State Agency consultant, Mark Walker, M.D. Rec doc. 11-3, Tr. 32-34. Walker similarly indicated that Ginn smelled like beer. Rec. doc. 11-3, Tr. 32. His examination results revealed a normal gait, a full range of motion in

Ginn's back and all joints and extremities, negative supine and seated straight leg testing, and normal grip strength. Rec. doc. 11-3, Tr. 34.

On November 29, 2017, Ginn indicated he was feeling a little better. Rec. doc. 11-7, Tr. 131. He denied hearing voices but claimed to hear knocking. *Id.* Impulsive behaviors were occurring less frequently. Rec. doc. 11-7, Tr. 132. He appeared calm, and there were no signs of anxiety or attentional difficulties. *Id.* He showed signs of moderate depression. *Id.* Dr. King's notes indicate that Ginn did not drink alcohol in over a year. Rec. doc. 11-7, Tr. 134.

On February 19, 2018, Ginn claimed to be a little better and denied any problems with anger. Rec. doc. 11-7, Tr. 136. Dr. King described Ginn as calm and friendly with a normal mood with no signs of anxiety. Rec. doc. 11-7, Tr. 137. A treatment plan was created on February 19, 2018, when Ginn saw therapist Strain. Rec. doc. 11-7, Tr. 142-45. At that time, Ginn was again relaxed, calm, and attentive and exhibited normal speech. Rec. doc. 11-7, Tr. 146. He showed no signs of depression or mood elevation and his thinking was logical and thought content coherent. *Id*. He did not appear for his appointment on May 14, 2018. Rec. doc. 11-7, Tr. 148.

The foregoing substantial evidence supports the ALJ's rejection of Dr. King's limitations as set forth in the check-box form. Other evidence of record indicates that, despite Dr. King's claim that Ginn had not consumed alcohol in over a year, Ginn himself admitted to drinking a six-pack a day less than a year earlier. Rec. doc. 11-7, Tr. 53. Additionally, two months prior to Dr. King's assessment, two consulting doctors reported that Ginn smelled of alcohol. Rec doc. 11-3, Tr. 32-37. Further, the forgoing evidence, including Dr. King's notes, supports a finding that, when Ginn regularly took his medication and participated in psychotherapy, his symptoms greatly improved. The record demonstrates that Ginn's mental health declined when he stopped taking his medication and consumed alcohol.

As for Ginn's claim that Rule 201.14 should have been applied to find him disabled, the Commissioner is correct that the Rule is not applicable. "Grid Rule 201.14 directs a finding of disabled on a claimant's fiftieth birthday when his skills are not transferable and his residual functional capacity limits him to sedentary work." *Broussard v. Commissioner of Social Security Administration*, 6:19-cv-0042, 2019 WL 6012856, at *9 (W.D. La. Oct. 23, 2019), *report and recommendation adopted*, 2019 WL 6003323 (W.D. La. Nov. 13, 2019). In a case such as this one, where the ALJ reaches the fifth step of the analysis, the use of expert vocational testimony, rather than the Grids, is the preferred method of proving that there is work available that the claimant can perform. *Fields v. Bowen*, 805 F.2d 1168, 1170–71 (5th Cir. 1985); *Lawler v. Heckler*, 761 F.2d 195, 197–98 (5th Cir.1985); *Dellolio v. Heckler*, 705 F.2d 123, 126–28 (5th Cir. 1983). The ALJ availed himself of such testimony. Rec. doc. 11-2, Tr. 42-46. The ALJ found that Ginn could do *light* work. Thus, Rule 201.14, which would compel a finding of disability only at the sedentary level, is not applicable. *Keller v. Barnhart*, No. Civ.A. 03-1647, 2005 WL 17990, at *2 (E.D. La. Jan. 4, 2005).

Finally, Ginn's claim that his loss of grip strength, pain in his right shoulder, and wrist pain does not meet the requirements of Social Security Ruling 96-9p, which require "good use" of both hands for sedentary work. Social Security Ruling 96-9p provides that "[m]ost unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity. Fine movements of small objects require use of the fingers; e.g., to pick or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions." Soc. Sec. R. 96–9p (Jul 2, 1996), 1996 WL 374185, at *9. Again, the ALJ found Dr. Cruz's opinion unpersuasive and that Ginn could do *light* work. Those finding are supported by substantial evidence. Where there is substantial evidence that a claimant can perform a limited range of light

work with limitations, the ability to perform sedentary work is not at issue. *Roberson v. Cain*, No. 2:13-CV197, 2015 WL 1408925, at *8 (N.D. Tex. Mar. 27, 2015). Thus, Ginn's reliance on SSR 96-9p is baseless. *Id.* (where sufficient evidence supported a finding that claimant could perform light work with limitations, his reliance on SSR 96-9p was unfounded); *Edminsten v. Astrue*, Civ. Action No. 5:11-CV-029-BG ECF, 2012 WL 995272, at *1 (N.D. Tex. Mar. 6, 2012) (Ruling 96-6p is inapplicable where the ALJ found the claimant was capable of performing light work), *report and recommendation adopted*, 2012 WL 99581 (N.D. Tex. Mar. 26, 2012); *Norris v. Astrue*, 5:11-CV-028-BG ECF, 2012 WL 413962, at *4 (N.D. Tex. Jan. 19, 2012) (same), *report and recommendation adopted*, 2012 WL 41390 (N.D. Tex. Feb. 9, 2012). Thus, SSR 96-9p is not applicable to this case.

### b.  Failure to Address the Findings of Dr. King Regarding the Applicability of SSR 96-9p

Ginn contends that the ALJ entirely failed to address Dr. King's findings, which, Ginn claims, also direct a finding of disability under SSR 96-9p. Rec. doc. 17, p. 11. The Commissioner responds that SSR 96-9p is not applicable because it applies in situations where an RFC is less than the full range of sedentary work. Rec. doc. 18, p. 7. The Commissioner continues that the ALJ found Ginn could perform up to light work. *Id.* The Commissioner recognizes that Dr. King found that Ginn demonstrated a substantial loss of ability to meet basic work-related activities, but argues that Dr. King's opinion was brief, conclusory and contradictory to other evidence in the record. *Id.* Finally, the Commissioner argues that whether the sedentary occupational base is eroded is irrelevant given that Ginn can perform light work. *Id.*

As addressed above at pages 11-12, on December 22, 2017, Dr. King completed a form in which he found Ginn had certain marked or extreme limitations in functioning, a minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life, and a substantial loss of ability to make judgments that are commensurate with the functions of unskilled work, respond appropriately to supervision, coworkers or usual work situations and deal with changes in routine work settings medically documented depression with psychotic features, including delusions and hallucinations.  Rec. doc. 11-7, Tr. 95-96.

Social Security Ruling 96-9P involves the residual functional capacity for less than a full range of sedentary work.  Soc. Sec. R. 96–9p (Jul. 2, 1996), 1996 WL 374185.  Claimants over the age of 50 who are limited to full range of sedentary work are considered "disabled" "unless the individual has transferable skills or education that provides for direct entry into skilled sedentary." *Id.*, at* 2

Contrary to Ginn's claim that the ALJ entirely failed to address Dr. King's findings, the ALJ expressly rejected Dr. King's opinion, finding the treatment notes showed improvement with consistent treatment, and his examinations were normal. Rec. doc. 11-2, Tr. 17.

For the reasons set forth in detail in section a., substantial evidence supports the ALJ's rejection of Dr. King's opinion with regard to Ginn's limitations.  Further, as previously explained, the ability to perform sedentary work is not an issue when a claimant can perform a limited range of light work.  *Roberson*, 2015 WL 1408925, at *8.  Thus, Ginn's reliance on SSR 96-9p is baseless.  *Id.; Edminsten*, 2012 WL 995272, at *1; *Norris,* 2012 WL 413962, at *4.

### c.  The ALJ Picked and Chose Portions of the Record to Support the Finding that Ginn's Psychiatric Impairments would not be Disabling but for his Episodic Noncompliance

Ginn's final claim is that the ALJ picked and chose portions from the record to support his findings that Ginn's psychiatric impairments would not be disabling but for his noncompliance with medication.  Rec doc. 17, p. 11.  Ginn claims that there are portions of Dr. King's notes that indicate that, even when compliant with his medication, Ginn was feeling worse and was unable to work on a consistent basis.  Rec doc. 17, pp. 12-13.  He further argues that, should there be any doubt, the case should be remanded for a determination as to whether Ginn had good cause for non-compliance consistent with Social Security Ruling 18-3p.  Rec doc. 17, pp. 13-14.

The Commissioner responds that the ALJ accepted that Ginn has a severe impairment, but that substantial evidence shows that it is well-controlled with medication.  Rec. doc.18, p. 7.  The Commissioner argues that the ALJ did not determine that the mental impairment was a result of medication non-compliance, but rather, only after determining that Ginn had a severe impairment, found that Ginn, when compliant with his medication, was capable of performing light work with simple one to two repetitive tasks.  Rec. doc.18, p. 8.  The Commissioner argues that Ginn relies on his own subjective statements to support his claim of disability rather than the medical evidence which, the Commissioner contends, demonstrates that Ginn is not disabled because his mental impairment is controlled with medication.  *Id*.

Initially, contrary to Ginn's claim, the ALJ did not find that Ginn's "psychiatric disability is a result of noncompliance with medication".  Rec. doc. 17, p. 11.  Rather, the ALJ found that Ginn has a mental impairment which causes mild to moderate limitations and considered those limitations when determining Ginn's Residual Functional Capacity.  Rec. doc. 11-2, Tr. 14-17. The ALJ also did not "pick and choose" portions of the record to support his finding that, when

Ginn was compliant with his treatment, Ginn's mental impairment did not prevent him from performing light work with simple one to two repetitive tasks  Instead, he reviewed the record and resolved conflicts in the evidence, as an ALJ is expressly tasked to do. *Jones v. Heckler*, 702 F.2d 616, 621 (5th Cir. 1983) ("It is within the administrative law judge's discretion to resolve the issue of conflicting evidence.").  The ALJ pointed out that Ginn's testimony that he had maintained sobriety for years conflicted with medical records showing active use of alcohol in August 2017. Rec. doc 11-2, Tr. 15 (citing Exhibit B5F/26).  As noted, Ginn admitted on various occasions that he was actively consuming alcohol.  Rec. doc 11-7, Tr. 9, 20, 53, 75.

The ALJ further cited to various portions of the record that indicated an improvement in Ginn's symptoms when he was compliant with his medication.  Rec. doc 11-2, Tr. 16, pp. 16-17 (citations omitted).  Ginn cites to portions of the record in April and September 2016, the latter when Ginn was admitted to Greenbrier Behavioral Hospital, as support of his claim that his symptoms increased even when complaint with medication.  Rec. doc. 17, pp. 11-13.  The statements in the notes upon which he relies, however, are his own subjective reported claims.

On April 20, 2016, Ginn saw Dr. King, at which time he reported that his symptoms had increased in frequency or intensity, he needed assistance with domestic tasks, was unable to work, and had sleep problems.  Rec. doc. 11-7, p. 71. While Ginn reported that his work performance was impaired and that he could not work, there is no indication from the record that Dr. King agreed that Ginn was incapable of working at that time.  *Id.*  Dr. King noted Ginn was friendly, attentive, and communicative although he had signs of "moderate depression."  Rec. doc. 11-7, p. 72.  He had fair insight and judgment and was cooperative and attentive with no gross behavioral abnormalities.  *Id*.

The September 20, 2016 notes from Greenbrier Behavioral Hospital indicate that, upon discharge on that date, Ginn was alert, oriented, in no apparent distress, and his mood had improved. Rec. doc. 11-7, Tr. 4. He reported no further auditory hallucinations. *Id.* His speech was normal, and his insight and judgment had improved. *Id.* The following day he reported to Dr. King that his self-care and domestic skills were intact and unimpaired, and he had a good night sleep. Rec. doc. 11-7, p. 79. While the progress notes indicate that Ginn's "work performance is impaired. Can not [sic] work," this statement, again, appears to be self-reported by Ginn. Rec. doc. 11-7, Tr. 79. Dr. King noted that Ginn was cooperative, calm, relaxed, happy, and had a normal mood. *Id.* His thinking was logical, with fair insight and judgment, and no signs of anxiety. *Id.*

"The fact that the ALJ cited certain evidence that he felt supported his decision does not mean that he failed to consider all of the other evidence in the record." *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010). The ALJ's decision specifically states that he carefully considered "the entire record." Rec. doc. 11-2, Tr. 15. There is no evidence to demonstrate otherwise.

Further, a claimant must follow the treatment prescribed by treating sources if the treatment is expected to restore his ability to work. 20 C.F.R. § 404.1530(a). If the claimant does not follow the prescribed treatment without a good reason, he will not be found disabled. 20 C.F.R. § 404.1530(b). Mental limitations are considered when determining if there is an acceptable reason for failing to follow prescribed treatment. 20 C.F.R. § 404.1530(c). Non-compliance that is a result of a mental impairment may constitute an acceptable reason. *A.E.S. v. Social Security Administration*, Civ. Action No. 18-cv-0810, 2019 WL 4744677, at *7 (W.D. La. Sept. 3, 2019) (citations omitted), *report and recommendation adopted*, 2019 WL 4748023 (W.D. La. Sept. 27, 2019). For instance, an inability to "understand the consequences of failing to follow prescribed

treatment" constitutes good cause for not following prescribed treatment, SSR 18-3p, 2018 WL 4945641, at *5 (Oct. 2, 2018).

Substantial evidence of record indicates that Ginn repeatedly stopped taking his medication. Rec. doc. 11-7, Tr. 3, 20, 75, 89. There are no medical records indicating that Ginn's non-compliance with his medical treatment was the result of his mental impairment. *Smith v. Berryhill*, Civ. Action No. H-18-2490, 2019 WL 3557586, at *9 (S.D. Tex. Jul. 11, 2019), *report and recommendation adopted*, 2019 WL 3548850, 2019 WL 3548850 (S.D. Tex. Aug. 5, 2019). While Ginn fully admitted to treating doctors when he had not taken his medications or missed appointments, at the hearing, rather than providing a reason for his non-compliance, Ginn claimed that he had been taking his medication and that the records were wrong. Rec. doc. 11-2, Tr. 31-32, 34. He also denied having an issue with substance abuse since 2016 despite substantial evidence demonstrating he continued to consume alcohol in 2017. Rec. doc. 11-2, Tr. 32-33, 41.

The medical records, as a whole, show, Ginn was well aware of his mental impairments, the need to take his medications regularly and abstain from alcohol, and the consequences of not following treatment. At the hearing, Ginn stated that mixing alcohol with his medication made him sick and "it throws [him] for – back to where [he] really don't [sic] know what's you on because all that medicine [he's] taking don't [sic] mix." Rec. doc. 11-2, Tr. 34. He was repeatedly educated about the risks and benefits of his medications, the need for medication management, and continued treatment. Rec. doc. 11-7, Tr. 65-66, 69, 73, 81, 86, 90, 123, 133, 139, 144-45, 147.

Regardless, the ALJ did not make a finding that Ginn would be found disabled but for his unjustifiable non-compliance with prescribed medical treatment, but rather considered Ginn's non-compliance in determining Ginn's Residual Functional Capacity. Rec. doc. 11-2, Tr. 16. Thus, there was no violation of SSR 18-3p. *Payne v. Saul,* Case No. 19-CV-1206-SCD, 2020 WL

4015609, at *5 (E.D. Wis. Jul. 16, 2020) (SSR 18-3p does not apply where the ALJ did not

determine claimant would be disabled but for his noncompliance); *Smith v. Berryhill*, Case No.

8:18-cv-1261-T-DNF, 2019 WL 2755054,  at *3-4 (M.D. Fla. Jul. 2, 2019) (addressing SSR 82-

59, which was rescinded and replaced by SSR 18-3p effective October 29, 2018).

## IV.    Recommendation

It is the **RECOMMENDATION OF THIS COURT** that the ALJ's decision denying

Dwayne Felix Ginn's claim for Supplemental Security Income Benefits be **AFFIRMED**.

A party's failure to file written objections to the proposed findings, conclusions, and

recommendation in a magistrate judge's report and recommendation **within fourteen (14) days**

after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court, provided that the party has been served with notice that such consequences will

result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.

1996).[2]

New Orleans, Louisiana, this 2nd day of November, 2020.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[2]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.